UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

IN RE:

BRENT KENDALL BEDINI,            CASE NO.: 20-50129-KKS
                                                         CHAPTER: 13

    Debtor.
_____/

## ORDER GRANTING *CHAPTER 13 TRUSTEE'S AMENDED MOTION TO DISMISS (ECF No. 79)* (ECF No. 91)

THIS CASE is before the Court on the *Chapter 13 Trustee's Amended Motion to Dismiss (ECF No. 79)* ("Amended Motion to Dismiss," ECF No. 91); and on *Chapter 13 Trustee's Motion to Modify Confirmed Chapter 13 Plan (ECF No. 35)* ("Motion to Modify," ECF No. 80). Debtor filed an Objection to the Chapter 13 Trustee's original Motion to Dismiss.[1] At a hearing held on July 16, 2025, the Court ordered counsel for the parties to each file briefs in support of their positions, which they did.[2] At a continued hearing, held on October 9, 2025, the Court ordered the parties to submit further briefing, which they have now done.[3] The

---

[1] *Chapter 13 Trustee's Motion to Dismiss*, ECF No. 79 ("Motion to Dismiss"); *Objection to Chapter 13 Trustee's Motion to Dismiss (ECF No. 79)*, ECF No. 86 ("Objection").
[2] *Chapter 13 Trustee's Briefing in Support of Chapter 13 Trustee's Motion to Dismiss (ECF No. 79)*, ECF No. 90; *Brief in Opposition to Trustee's Motion to Dismiss (ECF 79) and Motion to Modify Confirmed Plan (ECF 80)*, ECF No. 94.
[3] *Chapter 13 Trustee's Brief in Support of Chapter 13 Trustee's Amended Motion to Dismiss (ECF No. 91)*, ECF No. 99; *Brief in Opposition to Trustee's Amended Motion to Dismiss (ECF*

Court has had the matters under advisement since the parties finalized their briefs. Having reviewed the motions and briefs, and having considered the arguments of counsel and all applicable law, the Court has determined that the Chapter 13 Trustee's Amended Motion to Dismiss is due to be granted.

The Court has jurisdiction over this proceeding under 28 U.S.C. § 1334.[4] Under 28 U.S.C. § 157(a) and its Standing Order, the United States District Court for the Northern District of Florida has referred the bankruptcy case to this Court.[5]

### Background – This Case.

Debtor filed his voluntary chapter 13 petition on October 30, 2020.[6] After multiple hearings, the Court confirmed Debtor's *First Amended Chapter 13 Plan* ("Confirmed Plan," ECF No. 35) on May 14, 2021.[7] The Confirmed Plan provides for Debtor to make sixty (60) monthly payments to the Chapter 13 Trustee; the initial five (5) payments are $1246.45, and

---

*91) and Brief in Support (ECF 99)*, ECF No. 100.
[4] The district courts, and by referral bankruptcy courts, have original and exclusive jurisdiction over all cases under Title 11 and original, but not exclusive, jurisdiction over all civil proceedings "arising under" the Bankruptcy Code, "arising in" the Bankruptcy Code, or "related to" a case under Title 11. 28 U.S.C. § 1334(b).
[5] *See Standing Order of Reference Regarding Title 11*, No. 4:95-mcr-40111-DJ (N.D. Fla. June 5, 2012).
[6] *Voluntary Petition for Individuals Filing for Bankruptcy*, ECF No. 1.
[7] *Order Confirming Plan and Order to Debtor(s)*, ECF No. 39.

2

the remaining payments are $527.35 for the plan's duration. According to the Trustee, Debtor has $138,174.09 in general unsecured claims and the confirmed plan provides a distribution to unsecured creditors of approximately ten (10%) percent.[8]

Debtor calculated the payment amounts under the Confirmed Plan by using the disposable income figure from his original Schedule J for the first five payments and by using the disposable income figure from his Amended Schedule J for the remaining payments.[9] When Debtor filed his original Schedule J, Debtor's Schedules reflected that he was married but separated and that he claimed three (3) minor children as dependents.[10]

Debtor claims that he filed his 2020 income tax return under the status of "married filing jointly" because his dissolution of marriage was still pending at that time.[11] Debtor did not report his then estranged spouse's income on his original or Amended Schedule I.[12] Debtor's divorce was finalized by March or April of 2021, shortly before his plan was confirmed.[13]

---

[8] Amended Motion to Dismiss, ECF No. 91, ¶¶ 18–20.
[9] *Schedule J: Your Expenses*, ECF No. 1; *Amended Schedule J: Your Expenses*, ECF No. 34.
[10] *Schedule H: Your Codebtors*, ECF No. 1; *Schedule J: Your Expenses*, ECF No. 1.
[11] Objection, ECF No. 86, ¶¶ 5–6.
[12] *Schedule I: Your Expenses*, ECF No. 1; *Amended Schedule I: Your Expenses*, ECF No. 34.
[13] *Brief in Opposition to Trustee's Amended Motion to Dismiss (ECF 91) and Brief in Support (ECF 99)*, ECF No. 100, ¶¶ 2–3.

According to the Trustee, after 2020, Debtor filed his tax returns as married filing separately, as a result of which his non-filing spouse's income was never disclosed.[14] Debtor remarried in January of 2022.[15] Nothing other than Debtor's annual statements was filed on the docket from September 3, 2021, until June 9, 2025, when the Chapter 13 Trustee ("Trustee") filed her original Motion to Dismiss and Motion to Modify.[16]

## Discussion and Analysis.

The Trustee maintains that a debtor does not comply with 11 U.S.C. § 521(f)–(g) if the debtor files annual statements that omit information regarding the debtor's non-filing spouse and the non-filing spouse's income. According to Trustee, since Debtor filed such deficient annual statements, sufficient cause exists for the Court to grant her Amended Motion to Dismiss under 11 U.S.C. § 1307(c).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended certain sections of the Bankruptcy Code, including 11 U.S.C. § 521. Specifically, BAPCPA now provides that upon request, chapter 13 debtors must provide copies of their post-petition tax

---

[14] Motion to Modify, ECF No. 80, ¶ 3.
[15] *Brief in Opposition to Trustee's Amended Motion to Dismiss (ECF 91) and Brief in Support (ECF 99)*, ECF No. 100.
[16] As of June 9, 2025, Debtor had one plan payment remaining.

4

returns, accompanied by annual statements.[17] Section 521(g) details what is to be included in such annual statements.[18] Of particular importance is § 521(g)(1)(C), which states:

> A statement referred to in subsection (f)(4) shall disclose— . . . the identity of any person who contributed, and the amount contributed, to the household in which the debtor resides.[19]

Debtor filed three (3) annual statements in this case, each of which reported that nobody other than Debtor contributed any income to Debtor's household.[20] Debtor did not notify Trustee that he had been remarried in any meaningful manner. Instead, Debtor asserts that Trustee knew or should have known Debtor had remarried because his marital status was indicated on his 2022 and 2023 tax returns.[21]

Debtor maintains that after he remarried, he was not required to disclose his non-filing spouse's household contributions on his annual statements. In Debtor's words, he "and his current spouse keep fully

---

[17] 11 U.S.C. § 521(f).
[18] 11 U.S.C. § 521(g).
[19] 11 U.S.C. § 521(g)(1)(C); the same standard applies in all Chapter 13 cases filed in this Court. *See Chapter 13 Attorneys Fees, Adequate Protection Payments, Annual Statements, Form Plan, and Tax Returns*, Standing Order No. 19 (Bankr. N.D. of Fla. Sept. 30, 2014).
[20] *See Annual Statement (2021 Tax Year)*, ECF No. 69; *Annual Statement (2022 Tax Year)*, ECF No. 74; and *Annual Statement (2023 Tax Year)*, ECF No. 78.
[21] *Brief in Opposition to Trustee's Amended Motion to Dismiss (ECF 91) and Brief in Support (ECF 99)*, ECF No. 100.

5

separate financial accounts"[22] and "Debtor receives no financial benefit from the spouse."[23] Debtor bases his argument on the premise that the Bankruptcy Code defines "current monthly income" to include only the income of a non-filing spouse that is received by the Debtor.[24] Debtor argues that because his spouse has not contributed to any household expenses, information pertaining to his spouse's income can be fully excluded from Debtor's Schedules and withheld from his annual statements.[25]

Bankruptcy courts generally agree that for a non-filing spouse's income to be included in the current monthly income or disposable income calculations, the non-filing spouse's contributions toward a debtor's household expenses must be actually received by the debtor.[26]

Bankruptcy Code Section 1325(b)(1)(B) provides that if the trustee or an unsecured creditor objects to confirmation of a chapter 13 plan, which the Trustee did in the instant case, the plan must provide for all

---

[22] *Id.*
[23] *Brief in Opposition to Trustee's Motion to Dismiss (ECF 79) and Motion to Modify Confirmed Plan (ECF 80)*, ECF No. 94.
[24] 11 U.S.C. § 101(10A).
[25] *Brief in Opposition to Trustee's Motion to Dismiss (ECF 79) and Motion to Modify Confirmed Plan (ECF 80)*, ECF No. 94.
[26] *See In re Quarterman*, 342 B.R. 647, 650 (Bankr. M.D. Fla. 2006); *In re Waechter*, 439 B.R. 253 (Bankr. D. Mass. 2010); *Worth v. Frost (In re Worth)*, No. 23-CV-3182 (CS), 2024 WL 32116, at *2 (S.D.N.Y. Feb. 26, 2024).

6

of the debtor's net disposable income to be distributed to the unsecured creditors under such plan.[27] The Trustee has alleged that Debtor's Confirmed Plan does not provide for all of his net income. To a certain degree, the Trustee is correct. No one can determine whether Debtor has included all of his net disposable income because Debtor has never disclosed his non-filing spouse's income.[28]

Debtor's reliance on *In re Waechter*[29] is misplaced. The court in *Waechter* held that a debtor does not per se violate 11 U.S.C. § 1325(b)(1)(B) by not disclosing income from a non-filing spouse who allegedly does not contribute to the household expenses.[30] But the *Waechter* court ultimately denied confirmation because the debtor's plan did not satisfy the good faith requirement under 11 U.S.C. § 1325(a)(3).[31] The *Waechter* court reasoned that while many expenses could justifiably be paid solely by the debtor, some household expenses clearly benefitted the non-filing spouse and therefore the debtor was effectively subsidizing

---

[27] 11 U.S.C. § 1325(b)(1)(B).
[28] *See in re Carbajal*, 73 B.R. 446, 447 (Bankr. S.D. Fla. 1987) ("[the court] cannot make a finding that this debtor will in fact be able to make all payments under the plan and to comply with the plan, without having the earning capacity of the husband and his share of the household and living expenses before [the court] for evaluation as well as hers.").
[29] *In re Waechter*, 439 B.R. 253 (Bankr. D. Mass. 2010).
[30] *Id.* at 255 ("since the Debtor does not actually receive any income from [the non-filing spouse], her plan satisfies the requirements of § 1325(b)(1)(B).").
[31] *Id.*

7

her spouse's lifestyle at the expense of her unsecured creditors.[32]

In the instant case, like in *Waechter*, Debtor's non-filing spouse lives in Debtor's home and benefits from general household expenses, including utilities, water, sewer, cable, telephone, food, and internet expenses. *Waechter* differs from the case at bar because the *Waechter* debtor disclosed her non-filing spouse's income but proposed to confirm a plan that failed to contribute any of her spouse's income toward her expenses. Here, Debtor denies that he is responsible to report the income of his non-fling spouse and has refused to do so. Debtor is wrong.

Section 521 of the Bankruptcy Code mandates that debtors annually furnish information regarding changes in their financial status.[33] "The obvious purpose of this self-reporting obligation is to provide information needed by a trustee . . . to decide whether to propose hostile § 1329 plan modifications."[34] Debtor cites, and the Court has located, no authority to suggest that a chapter 13 debtor can circumvent the requirements of § 521(f)–(g) and still have a plan confirmed or survive

---

[32] *Waechter*, 439 B.R. at 256 (finding that as the co-occupant of a marital home, the debtor's non-filing spouse certainly benefitted from the debtor paying for the utilities, water, sewer, cable, telephone, food, home maintenance, and internet expenses.).
[33] 11 U.S.C. § 521.
[34] *Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 544 (B.A.P. 9th Cir. 2007) ("[P]art of the statutory bargain inherent in chapter 13 is that the debtors must, for the prescribed life of the plan, run the gauntlet of exposure to trustee or creditor requests to increase payments.").

a motion to dismiss. Debtor's failure to disclose his spouse's income on his annual statements and his failure to amend his Schedules I and J demonstrate a pattern of bad faith.[35]

Section 1307 of the Bankruptcy Code governs dismissal in chapter 13 bankruptcy cases.[36] In the Amended Motion to Dismiss the Trustee correctly claims that 11 U.S.C. § 1307(c)(1) and (c)(6) authorize a bankruptcy court to dismiss a Chapter 13 case for cause. Section 1307(c) contains a non-exhaustive list of what equates to cause.[37] The "cause" the Trustee asserts here comprises Debtor's failure to disclose income to the detriment of his creditors, and a default under the Confirmed Plan by failing to submit all disposable income to the plan.[38] In determining whether bad faith is present, courts analyze, among other things, "whether . . . under the 'totality of the circumstances,' the debtor has abused the provisions, purposes, and/or spirit of Chapter 13."[39]

In the instant case, under the totality of the circumstances, Debtor's

---

[35] *See In re Deal*, No. G10–23553–REB, 2014 WL 2086783, at *3 (Bankr. N.D. Ga. Mar. 11, 2014) (Bankruptcy court dismissed a confirmed chapter 13 case where the debtor waited seven months to amend his schedules to reflect that his non-filing spouse had substantial additional income.).
[36] 11 U.S.C. § 1307.
[37] 11 U.S.C. § 1307(c).
[38] Amended Motion to Dismiss, ECF No. 91, ¶ 22.
[39] *In re Plagakis*, No. 03-CV-0728, 2004 WL 203090, at *4 (E.D.N.Y. Jan. 27, 2004).

9

overall conduct is violative of the spirit of Chapter 13. In a case with similar facts, *In re Cluff*, a bankruptcy court found that a debtor who waited eighteen (18) months after confirmation to inform a chapter 13 trustee of her post-petition change in marital status was not acting in good faith.[40] In that case the debtor remarried one month before her plan was confirmed.[41] The Chapter 13 trustee was unaware of the remarriage until the trustee filed a motion to dismiss due to the debtor's failure to provide tax returns to the trustee, more than a year after confirmation.[42] Upon receiving the debtor's tax returns, the trustee filed a motion to modify the debtor's plan and a second motion to dismiss.[43] Though the *Cluff* court denied both motions, it was because the debtor amended her schedules to properly include her spouse's income, and because she experienced additional changes in her financial circumstances that did not permit for a plan modification.[44]

## Conclusion.

The pivotal difference between *In re Cluff* and the case at bar is

---

[40] *In re Cluff*, No. 09-41244-JDP, 2012 WL 909551 at *4 (Bankr. D. Idaho Mar. 16, 2012).
[41] *Id.* at *1.
[42] *Id.* at *2.
[43] *Id.*
[44] *Id.* at *4.

Debtor's conduct after the Trustee discovered Debtor's change in marital status by examining Debtor's tax returns. Although this occurred toward the end of the case, Debtor has failed to provide Trustee with information required under the Bankruptcy Code. Even now, Debtor has not amended his schedule I to include his spouse's income. Debtor continues to maintain that he is not required to do so. But because that position is contrary to the requirements of the Code and this Court's Chapter 13 procedures, Debtor is not entitled to reap the benefit of a Chapter 13 discharge.

For the reasons stated, it is

ORDERED:

1. The *Chapter 13 Trustee's Amended Motion to Dismiss (ECF No. 79)* (ECF No. 91) is GRANTED.

2. This case is DISMISSED.

DONE and ORDERED on December 16, 2025.

KAREN K. SPECIE
Chief U.S. Bankruptcy Judge

cc: Trustee Leigh A. Duncan is directed to serve a copy of this Order on interested parties and file a proof of service within three (3) business days of entry of the Order.